1  Roy C. Dickson, Esq. State Bar No. 105583
   **DICKSON & ASSOCIATES**
2  **A Professional Law corporation**
   2323 North Tustin Avenue, Suite I
3  Santa Ana, California 92701
   Telephone: (714) 541-8080
4  Facsimile: (714) 541-8090

5  Attorney for Debtor

6

7

8                     **UNITED STATES BANKRUPTCY COURT**

9              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11

12 | In re:                          | ) | Case No.: 09-36912 |

13 | ORLANDA CUNNINGHAM,             | ) | Chapter 11 |

14 | Debtor,                         | ) | **THIRD AMENDED DISCLOSURE** |
                                        | ) | **STATEMENT** |
15                                     | ) |
                                        | ) | **Date: October 26, 2010** |
16                                     | ) |
                                        | ) | **Time: 2:00 p.m.** |
17                                     | ) |
                                        | ) | **Ctrm: 1668** |
18 |_____| ) |

19      Debtor, **ORLANDA CUNNINGHAM**, hereby submits the following Third Amended

20 Disclosure Statement for her Plan of Reorganization:

21

22 1.     **INTRODUCTION**

23      Debtor In possession **ORLANDA CUNNINGHAM** ("Debtor") hereby submits her

24 Third Amended Disclosure Statement describing her Chapter 11 Third Amended Plan of

25 Reorganization as follows.

26 2.     On October 2, 2009, Debtor commences this bankruptcy case by filing a Chapter 11

27 petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 et seq.,

28 which allows the Debtor, and under some circumstance, creditors and other parties in interest, to

                                          1

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

propose a plan of reorganization ("Plan"). The plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. Debtor is the party proposing the Plan sent to you in the same envelope as this document.

**THE DOCUMENT THAT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.**

3.     This is a reorganization plan. The Debtor proposes to reorganize her business by restructuring her debt and paying her creditors from income generates by the ongoing operation of her business. Attached is the Debtor's Chapter 11 second amended plan of reorganization (the Plan). The Court has set a date for confirmation of the Plan. That date will be the effective date of the Plan. The Court's order setting the date for hearing of confirmation and important date is also enclosed.

4.     You will be entitled to vote on the Plan, or object to confirmation of the Plan or final approval of the Disclosure Statement. Ballots must be received by Debtor's counsel, and objections to the Plan or Disclosure Statement must be filed with the Court and set forth in the Court's order. The Courts has set a date for a hearing on confirmation of the Plan and approval of the Disclosure Statement as shown in the enclosed order.

5.     **Purpose of this Document**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

(1)     **WHO CAN VOTE OR OBJECT,**

(2)     **WHAT THE TREATMENT OF YOUR CLAIM IS** (i.e., what your claim will receive if the Plan is confirmed), and how this treatment compares to what your claim would receive in liquidation,

(3)     **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS SURING THE BANKRUPTCY,**

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

(4)    **WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any part can now solicit votes for or against the Plan.

**B.    Deadlines for Voting and Objection; Date of Plan Confirmation Hearing**

**THE COURT HAS NOT YET CONFIRMAED THE PLAN AS DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER OWRDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.**

**1.    Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to confirm the Plan will take place on **October 26, 2010**, at **2:00 p.m.**, in **Courtroom 1668**, US Bankruptcy Court, Roybal Federal Building, 225 E. Temple Street, Los Angeles, CA 90012.

**2.    Deadline for Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to **Roy C. Dickson, Esq., 2323 North Tustin Avenue, Suite "I", Santa Ana, California 92705**.

Your ballot must be received by _____ or it will not be counted.

///

3

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

3.   **Deadline to Objection to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon the Debtor by _____.

4.   **Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact **Roy C. Dickson, Esq., 2323 North Tustin Avenue, Suite "I", Santa Ana, California 92705.**

**C.    Disclaimer**

The financial data relied upon in formulating the Plan is based on books and records of the Debtor, the Plan Proponent. The Plan Proponent represents that everything stated in the Disclosure Statement is true to the Proponent's best knowledge. The Court has not yet determined whether or not the Plan is confirmable and makes no recommendations as to whether or not you should support or oppose the Plan.

**5.    BACKGROUND**

**A.    Description and History of the Debtor's Business**

1.    The Debtor is a sole proprietor. Debtor is a sole proprietor who has been self employed for the past 20 years. She received her State of California Real Estate license in 1989 while she was employed as a business sales representative for Pacific Bell. Debtor worked part-time for various major real estate companies until she became a full-time real estate sales person for JLA Realty in Westwood. Debtor's Real Estate license is currently "NBA". This means "No Current Employing Broker". Debtor has her license for Family Dar Care and Foster Care License. Debtor purchased her first home in 1994 for $35,000. This property is located at 7214 10th Ave, Los Angeles, CA. This property was in need of total rehabilitation from the foundation to the roof. Debtor was credit worthy to qualify for financing and refinance of the loan on this property. Debtor refinanced this property in September of 2005 for $266,000.00. Debtor received a sub-prime loan even though she qualified for a prime loan. The funds received from the refinance were used for needed repairs on this and the other properties.

2.    The property (7214 10th Ave.) was foreclosed sale in April 2010 and is currently in litigation in Los Angeles Superior Court regarding the illegal foreclosure.

4

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

3.      In August 1996, the Debtor purchased the property at 4711-13 4th Avenue, Los Angeles (a Duplex). The property was a bank foreclosure and Debtor was credit worthy to qualify for the loan. The Debtor saw the potential of the large property. She received her license foster case in 1999 with a capacity for 6 children, ages 12-18, boys only. Debtor has been at full capacity at various times throughout the past ten years. Debtor currently has legal guardianship of one boy age 16 but has had legal guardianship of three children at one time. Debtor refinanced this property in January of 2007 for $750,000.00. Debtor received a sub-prime loan even though she qualified for prime financing. The funds from this loan were used to pay off debts and purchase another property for income purposes. The Debtor uses the entire downstairs unit, 4713, for the operation of her Daycare facility business and she uses the upstairs unit, 4711, as principle residence.

4.      Debtor received her State of California foster care business in 1999 for the address 4711 4th Ave. (upstairs). Debtor's capacity is for six children ages 12-18, boys only. Debtor has been at full capacity at various times throughout the past ten years. Debtor currently has legal guardianship of three boys ages 13, 14, and 15. Debtor refinanced this property in January of 2007 for $750,000.00. Debtor received a sub-prime loan even though she qualified for prime financing. The funds from this loan were used to pay off debts and purchase another property for income purposes.

5.      In May of 2002, Debtor took over payments of 5728 10th Avenue, Loa Angeles, CA, from a friend that was in foreclosure. Debtor's biological son moved into the property. He pays approximately $1000.00 per month for rent to the Debtor. Debtor claimed this property as her second residence. The property was badly in need of rehabilitation from the foundation to the roof. Debtor refinanced this home. With the assistance of her children, most of the repairs were completed except for a pool that was too expensive to fix.

6.      Debtor purchased 5459 10th Avenue, Los Angeles, California, in February of 2005 because it was more suitable for Debtor to live in. Debtor was very credit worthy and the financing was affordable. Debtor refinanced this property. Debtor's daughter was living in 4711-13 4th Avenue, working and paying rent to the Debtor. Accordingly, Debtor moved into the 5459

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

10th Avenue, Los Angeles, CA property. Debtor's son and daughter were certified, fingerprinted
and trained in CPR/First aid to assist the Debtor in operating businesses, foster care and daycare.
In 2003, the daycare business was good but with recent recession, the business activity has
declined substantially. As stated herein above, the Debtor has now moved into the 4711 4th
Avenue property and presently uses it as her principle residence.

7.      Debtor and her youngest son took a class on operating a sober living business in August
of 2006 from the Sober living Network. The Sober Living business appeared to present a solid
structure for future business opportunities. The property at 1851 W. 85th Street, Los Angeles was
purchased in August of 2006 for a purpose of operating a sober living home. The property at
1851 W. 85th Street, Los Angeles was first leased to the H.O.W. Foundation which operates
transition housing services. This foundation leased the property for about one year but failed to
pay their rental obligation on time. They were asked to leave.

8.      Debtor purchased 1246 W. 68th Street, Loa Angeles, CA, in April of 2007 because the
seller offered her a sale with credit in the financing. This property was also leased to the H.O.W.
Foundation. They were asked to move because of their neglect to honor their lease agreement.
Debtor, with the assistance of her son, stated operating Sober Living/Transitional Housing homes
in 2007. Debtor furnished the 85th Street property with 20 beds and the 68th Street property with
10 beds.

9.      In February of 2007, Debtor purchased 5149 7th Avenue, los Angeles for the purpose of
opening another Sober Living home.  This was furnished with 16 beds. Debtor later moved the
sober living clients to the 68th Street property because the capacity was low and she was able to
lease to a private party.

10.     In March of 2007, Debtor was credit worthy and purchased 2200 W. 73rd Street, Los
Angeles, CA, a duplex, that was to be used for Sober Living/Transitional Housing.  This home
was furnished with 30 beds. Debtor has received approval from the L.A. County Probation
Department to house homeless probation participants under a program they were funding.
Unfortunately, the program funding ran out in late 2007.

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

11.    Debtor purchased 1814 New England Street, loan Angeles, CA in August 2007, looking at its potential to be resold at a later date for a profit. Debtor submitted plans and received permits to rehabilitate the property. The property was partially vacant when it was purchased. Debtor found new tenants. However, in early 2008, the tenants started having problems paying the rent. Debtor presently has two units set up for sober/transitional housing with 10 beds.

12.    When the housing market started falling in 2007, Debtor asked for loan modifications from her lenders but was told she is not having a problem because she was paying all her debts timely. Debtor sought help from professional loan modification companies later in 2008. The Debtor spent approximately $30,000 from loan modification services without results. Debtor has filed litigation against some of these companies and filed State Bar Association complaints against attorney Mark Nelson who defrauded her.

13.    In that regard, Debtor met with Homeowners Advisory Council of Ontario, California in May of 2009 for expert help with loan modification. She was advised a Chapter 11 Bankruptcy would accomplish her need to modify her loans. She was told they had an experienced attorney, Mark Nelson, who would make the process quick and efficient. She was told that she did not need to make any more payments until the bankruptcy was completed. Debtor paid$6,500 for this service. Debtor was contacted by a San Bernardino District Attorney investigator, M. Landrum, who stated that the principals of Homeowners Advisory Council had been arrested for fraud with a box of her personal papers. The pending criminal case is FSB902405 in criminal court of San Bernardino County. Debtor followed up with attorney Nelson, the attorney named on her bankruptcy papers.  Debtor never met Mr. Nelson and never signed any bankruptcy papers for Mr. Nelson. She started receiving notice of case deficiencies. Later, Mr. Nelson told the Debtor that he was a victim of the owners of HAC also.

14.    Attorney Nelson represented that he was committed to the case and would complete the filings. However, he did not have the money to do so. Accordingly, Mr. Nelson was paid another $6,500.00 but did not complete the filing. Debtor met with attorney Cameron Totten who agreed to assist with her Chapter 11 Bankruptcy. Attorney Totten failed to ask the court for a sufficient amount of time within which the Debtor could complete her schedules and other required

7

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

1   documents to complete her second bankruptcy filing. He only asked for three days. That was an

2   insufficient amount of time and as a result, the Debtor's case was dismissed, without a bar.

3   Debtor has since filed a complaint with the California Bar association against Attorney Nelson

4   but Attorney Totten did not feel he needed to file a complaint against Attorney Nelson for a

5   return of the fees she paid. The Debtor intends to file a Motion requesting to Court to order the

6   fees paid to Attorneys Nelson and Attorney Totten disgorged.

7   15.      The Debtor is basing her Plan of reorganization on her Sober Living/Transitional

8   Housing business. Demand for quality sober housing far exceeds supply. That is particularly true

9   for housing that is accessible to those of limited or modest means. Debtor has received approvals

10  from local housing agencies, the State of California department of Social Services, State of

11  California Parole, Los Angeles County Probation, Veterans Administration, Los Angeles County

12  Department of Mental Health and various local homeless agencies. Debtor has developed a

13  reputation for "dignity in living" homes.

14  16.      The sober living housing business had a good potential for future growth. Because Sober

15  Living homes are neither boarding houses nor commercial enterprises, they cannot be classified

16  as such by local governments. Local governments cannot require zoning or land use permits or

17  restrictions for a residence that is not required to be licensed which is not also imposed on all

18  residences in the jurisdiction. Therefore no business license or permit is required by the City of

19  Los Angeles where the properties are located.

20  17.      Sober living residences are houses where people abstain from alcohol and drugs and seek

21  a clean and sober living environment. There are no treatment or counseling services given. The

22  Sober Living Homes are considered the same as any other residential rental. They exist by right,

23  just as any single family dwelling unit, whether it is a single family home, a unit in a duplex, a

24  large apartment complex, or other types of dwelling units. Sober living homes are considered

25  nondiscriminatory because the standards apply equally to everyone and are, therefore, generally

26  exempt from the application of fair housing laws. Federal and state fair housing laws provide

27  protections from housing discrimination for persons with disabilities. Disabilities, according to

28  fair housing laws, include, but are not limited to, the mentally ill and those addicted to alcohol

8

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

and other drugs. Housing includes licensed residential treatment programs as well as sober living and other independent living homes where individuals with disabilities reside as a family for an extended period as opposed to an overnight or "hotel" situation. Debtor's facilities are designed to be a sober/transitional living situation, helping people rehabilitate back into society, back to their families, and on to reach their God-given potential. Debtor has no time limit for this transition. All residents are expected to have completed a treatment program and are to be currently in an outpatient program. Transitional housing clients do not have these requirements but must be committed to practice sobriety.

**E.     Bankruptcy Proceedings**

The following is a chronological list of significant events which have occurred <u>during</u> this case:

1.     Motions regarding Counsel.

On April 1, 2010 the court approved an Application to Employ Cameron Totten as the attorney for the proceeding.

On May 5, 2010 Attorney Cameron Totten requested leave of Court to withdraw from the case as counsel for the Debtor. The request was granted on June 22, 2010.

On June 22, 2010, Cameron Totten filed a petition seeking compensation for his services to date of withdrawal. The Debtor filed objections to this Motion. The hearing on the matter was continued to August 4, 2010.

2.     Litigation

At the onset of the bankruptcy the Debtor was engaged in litigation with Aurora Loan Services, LLC. The action was removed to the Bankruptcy Court and has now been remanded to the Los Angeles Superior Court. The matter was dismissed as to Aurora against the specific instructions of the Debtor. The Debtor plans to file a motion in the State Court Action to set aside the dismissal.

The Debtor is considering filing suit for disgorgement of legal fees paid to prior attorneys.

**F.     STEPS TAKEN TO SOLVE CASH FLOW PROBLEMS.**

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

The Debtor has already entered into loan modification on the following properties with the following lenders:

LIST.

These modifications will reduce the amount of debt service and will place the Debtor in a better cash flow position tan she has as the beginning on these proceedings.

## G.    CURRENT AND PROJECTED INCOME OF THE BUSINESS.

Attached as Exhibit A is a list of all the property of the Debtor with the current income and projected income on modification per plan.

## II.    CLASSIFICATION OF CLAIMS AND PLAN OF REORGANIZATION

As required by the Bankruptcy Code, the Plan classifies claims and interests n carious classes according to their right to property. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

## A.    <u>Unclassified Claims</u>

Certain types of claims are not placed into voting classes; instead there are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, Debtor had not placed the following claims in a class.

### 1.    Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(1). The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment. The amount of the administrative claims will be determined at a later date but are estimated to be approximately $5,000 in Trustee's Fees and Court Fees and $10,000 in attorney's fees. The Court must rule on all administrative claims. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be

10

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

owed and required to be paid under this Plan. If the Plan is confirmed, Counsel for Debtor has agreed to allow for the payment of attorney's fees in 60 equal monthly payments.

**2.      Priority Tax Claims**

These are claims for real property taxes. Most of the properties have taxed impounded with the payments that are made on the mortgages. There are no unpaid property taxes at this time.

**B.    Classified Claims**

A.      Secured creditors are classified as Class 3 claims and are divided into subclasses. One property and related encumbrances are allocated to subclasses 3A to 3H. Treatment of the Subclass 3 claims is set forth in Article 4 of the Plan. In general, new loans are issued equal to the fair market value of the properties for 30 years at 5% interest fully amortized unless a different term has been agrees upon with the lender. Any excess encumbrance over fair market value is allocated to Class 6 claims and paid in accordance with other Class 6 claims. Some subclasses have reached stipulations with the Debtor and the details thereof are set forth in Article 4.

B.      Class 4 claims are second trust deeds that are not secured due to decrease in fair market value. These claims are allocated to Class 6 claims and paid in accordance with other Class 6 claims.

C.      Class 5 claims related to the loans on a property a portion of which is used as the Debtor's residence. The second trust deed is not secured t=due to the decrease in the fair market value of the property. The first trust deed is modified as the other Class 3 claims and excess is allocated to the Class 6 claims and paid in accordance with other Class 6 claims.

D.      Unsecured creditors are allocated to Class 6 claims. The Debtor will pay 1.5% of these claims per year in 60 monthly installments. These payments will be distributed to the Class 6 creditors' pro-rata by the trustee.

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

E.    Administrative, tax, and other priority claims will be paid in full as provided in the plan.

3.    **DISCHARGE AND ENFORCEMENT OF PLAN**

Upon completion of payments, under the Plan, Debtor will receive a discharge of pre-confirmation debts. The payments promised n the Plan constitutes new contractual obligations that replace the discharged pre-confirmation debts. Creditors may not sue so long as Debtor is not in material default under the Plan. If Debtor materially defaults in performing the Plan, affects creditors may sue Debtor to enforce the terms of the Plan or move to convert to a Chapter 7.

4.    **VOTING.**

A.    **WHO MAY VOTE.**

Creditors are entitled to vote on confirmation of the Plan unless (1) the class is unimpaired or are to receive no distribution; (2) an objection has been filed to the creditor's claim; or (3) the claim is unclassified. A creditor whose claim has been objected to and who wishes to vote must move to have its claim allowed for voting purposes by filing a motion for such relief in time for the motion to be heard at or before the confirmation hearing.

B.    **HOW TO VOTE.**

Fill out and return the attached ballot so that it is received by Debtor's counsel on or before _____.

C.    **EFFECT OF THE VOTE.**

The plan will be confirmed only if it is accepted by each impaired class, (exclusive of insiders) and the Court determines it is fair and equitable to all dissenting classes. A class of creditors accepts the Plan if it is accepted by a majority in number and two-thirds in dollar amount of creditors who cast ballots. If impaired classes exist, the Court cannot confirm the Plan unless (1) at least on impaired class has accepted the Plan without counting the voted of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes. The Code allows the Plan to be "crammed down" on non-accepting classes of claims or interests if it meets all

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

consensual requirements except the voting requirements of sec. 1129(a) (8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

5.      **FINANCIAL INFORMATION**

A.      Debtor plans to make payments required under the Plan from revenue available from future operations. Since filing the Debtor has a cumulative loss on accrual basis of $83,528. As shown in the Plan the Debtor is projecting and operating profit after modification of the first trust deed loans and discharge of the second trust deed loans that are now unsecured. The operative loss, excludes professional expenses and filing fees incurred in this case. Upon request the Debtor will provide copies of monthly operating reports filed with the Court.

B.      In a Chapter 7 liquidation, the general unsecured creditors and second trust deed holders will not receive any payments. The holders of the first trust deed will receive principal and interest over 30 years as proposed in the Plan. Any uncured portion of the first trust deeds will be written off.

C.      The total of assets on hand valued per Broker's Price
Opinion is:                                    $2,340,000.
The total liabilities after modifications and discharges as
provided in the Plan are:                      $2,340,000.

D.      **PROJECTED INCOME OF PROPERTIES**

The Debtor is engaged in a sober living business transitional housing business, child care and rental housing. The properties utilized for sober living and child care are:

| Property Address, | Total Beds, | Income at Full Capacity | and Current level: |
|---|---|---|---|
| 2200 W. 73rd St. | 20 sober living beds | $8,000.00 | $3,444.00 |
| 1246 W. 68th St. | 6 sober living beds | $2,000.00 | $1,600.00 |
| 1851 W. 85th St. | 16 sober living beds | $8,000.00 | $3,086.00 |
| 1814-16 New England Ave. | 10 sober living beds | $2,400.00 | $1,200.00 |
| 1818-20 New England St. | Private Rentals | $2,450.00 | $2,450.00 |
| 5459 10th Ave. | SFR private rental | $2,600.00 | $1,800.00 |

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

| 1 | 5728 10th Ave. | SFR private rental | $1,600.00 | $1,200.00 |
| 2 | 5149 7th Ave. | SFR private rental | $2,400.00 | $1,800.00 |
| 3 | 7214 10th Ave. | SFR private rental | $1,400.00 | $1,200.00 |
| 4 | TOTAL | | $31,850.00 | $17,730.00 |

5   Currently, the principal assets include 8 rental properties in South Los Angeles. Some of

6   the units are occupied by relatives of the Debtor at market rate rents. The balance of the units is

7   available for rent by those referred by social service agencies as sober living facilities. The

8   property at 4th Avenue is two stories; the lower half of which is used by the Debtor for her child

9   care business. Also she has three foster children that she cares for with the costs being paid by

10  Los Angeles County. The Debtor uses the upper floor for her personal residence.

11   Due to the financial crisis that has engulfed the country, all of the properties have a fair

12  market value less than the amount of the debt. The reorganization plan deals with this disparity

13  by allocating a portion of the value of the properties to unsecured debt. Three of the properties

14  have second trust deeds that are wholly impaired. These three trust deeds are allocated to

15  unsecured debt.

16   By allocating the debt and modifying the first trust deeds to a lower interest rate with

17  lower payments, the Debtor will have a viable business that will make a profit.

18  8.    **THE FUTRE OF THE DEBTOR'S BUSINESS.**

19   Debtor has been able to operate her business in a limited way even hampered by the

20  recession and burdensome loan terms. The Plan will modify the amounts of the secured debts

21  based on current real property values. The Debtor believes that she will be able to achieve a near

22  full capacity of her sober living business with adjustment of the loan terms. The risk to the

23  creditors is that Debtor will not be able to achieve these goals. The alternative is a Chapter 7

24  bankruptcy where the creditors will receive only the liquidation value of their interests. The

25  unsecured creditors will receive nothing. Given these facts, the creditors will be better off by

26  accepting the Plan than liquidating their loan positions. Three of the eight properties are

27  occupied by relatives of the Debtor. It is anticipated the relatives will continue to occupy these

28

14

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

1  properties. These relatives are paying market rate rents and will continue to do so. If in the even

2  they cannot afford to pay the rent, they will be evicted and the property rented to non-relatives.

3

4  **CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN**

5  **MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN**

6  **ACCOUNTANTS, ATTORNEYS AND/OR ADVISORS.**

7

8  The following disclosure of possible tax consequences is intended solely for the purpose

9  of altering readers about possible tax issues this Plan may present to the Debtor. The Proponent

10  CANNOT and DOES NOT represent that the tax consequences contained below are the on tax

11  consequences of the Plan because the Tax Code embodies many complicates rules which make it

12  difficult to state completely and accurately all the tax implications of any action. Each creditor

13  must determine the tax effect of the organization on its business. Debtor is advised that the

14  reorganization plan will have less of an adverse effect of the creditors that a Chapter 7

15  liquidation. Debtor is advised that tax effects will be similar to what the creditors would

16  experience in a Chapter 7 bankruptcy.

17

18  **IV. CONFIRMATION REQUIREMENTS AND PROCEDURES**

19  **PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS**

20  **PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW**

21  **ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.**

22  A.   **GENERAL PRINCIPALS**.

23  The following discussion is intended solely for the purpose of altering readers

24  about basic confirmation issues, which they may wish to consider, as well as certain

25  deadlines for filing claims. The Debtor CANNOT and DOES NOT represent that the

26  discussion contained below is a complete summary of the law on this topic.

27  Many requirements must be met before the Court can confirm a Plan. Some of the

28  requirements include that the Plan must be proposed in good faith, acceptance of the

15

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

Plan, whether the Plan pays creditors at least as much as creditors would receive in Chapter 7 liquidation, and whether the Plan is feasible. These requirements are not only the requirements for confirmation. The reorganization plan offers the best alternative to converting the Debtor's assets into a viable business model. The only alternative is to file a Chapter 7 where the creditors will receive a fraction of their debt and the Debtor will lose her business.

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, is a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then the claimant or interest holder must receive or retain under the Plan property of a value no less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secures creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must fins that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here for the following reasons.

With respect to the claims that are secured by the properties, a foreclosure would result in the lender receiving the property at its fair market value less the cost of foreclosure and carrying. The estimated amount the Class 3 creditors would receive is equal $1,506,000.  In the Plan, Debtor proposes that the loan payments on the Class 4 claims (4711 4th Ave. property) where the Debtor resides be adjusted. With the

16

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

1    adjustment, Debtor will be able to pay the adjusted amounts and retain the property. The

2    unsecured creditors will be paid pro-rata at the rate of 2% of the amount of said Class of

3    claims. The adjustments to the loans and payments will allow the Plaintiff to make these

4    payments which will be more than they would receive on an outright Chapter 7

5    liquidation.

6        In a Chapter 7 liquidation, the general unsecured creditors and second trust deed

7    holders will not receive any payments. The holders of first trust deeds will receive

8    principal and interest over 30 years as proposed in the Plan. Any uncured portion of the

9    first trust deeds will be written off.

10   **B.    FEASIBILITY.**

11       Another requirement for confirmation involves the feasibility of the Plan, which

12   means that confirmation of the Plan is not likely to be followed by the liquidation, or the

13   need for further financial reorganization, of the Debtor or any successor to the Debtor

14   under the Plan, unless such liquidation or reorganization is proposed in the Plan. There

15   are at least two important aspects of a feasibility analysis.

16       The first aspect considers whether the Debtor will have enough cash on hand on

17   the Effective Date of the Plan to pay all the claims and expenses which are entitled to be

18   paid on such date. The Plan Proponent maintains that this aspect of feasibility is satisfied

19   as all of the current portion of the Class 1 claims will be paid. The second aspect

20   considers whether the Proponent will have enough cash over the life of the Plan to make

21   the required Plan payments. As set forth above and in the Plan, if the secured debt is

22   reduced, the operation of the business will produce sufficient income to make the

23   required Plan payments.

24   **C.    DISCHARGE.**

25       This Plan provides that upon payment un full of proposed plan payments to the

26   unsecured creditors, Debtor shall be discharged of liability for payment of debts incurred

27   before confirmation of the Plan, to the extent specified in 11 U.S.C. § 1141. However, the

28   discharge will not discharge any liability imposed by the Plan.

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

D.    **REVESTING OF PROPERTY IN THE DEBTOR**

The confirmation of the Plan re-vests all of the property of the estate in the Debtor.

E.    **MODIFICATION PLAN**

The Proponent of the Plan may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or re-voting on the Plan. The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

F.    **POST-CONFIRMATION STATUS REPORT**

Within 120 days of the entry of the order confirming the Plan, Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be serves on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities.

G.    **QUARTERLY FEES**

Quarterly fees accruing under 28 U.S.C. § 1930(a) (6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the Plan. Quarterly fees accruing under 28 U.S.C. § 1930(a) (6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a) (6) until entry of a final decree, or entry of an order of dismissal or conversion to Chapter 7.

H.    **POST-CONFIRMATION CONVERSION/DISMISSAL**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will re-vest in the Chapter 7 estate. The automatic stay will be re-

18

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

imposed upon the re-vested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

I.    **FINAL DECREE**

Once the estate has been fully administers as referred to in Bankruptcy Rule 3022, Debtor, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

Dated: August 18, 2010

**DICKSON & ASSOCIATES**

Roy C. Dickson, Esq. Attorney

For Debtor

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

# BALLOT

1  Roy C. Dickson, Esq. State Bar No. 105583
   *DICKSON & ASSOCIATES*
2  *A Professional Law corporation*
   2323 North Tustin Avenue, Suite I
3  Santa Ana, California 92701
   Telephone: (714) 541-8080
4  Facsimile: (714) 541-8090

5  Attorney for Debtor

6

7

8              UNITED STATES BANKRUPTCY COURT

9           FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11

12 In re:                          ) Case No.: 09-36912
                                   )
13      ORLANDA CUNNINGHAM,        ) Chapter 11
                                   )
14          Debtor,                ) **BALLOT ON THIRD AMENDED PLAN**
                                   ) **OF REORGANIZATION**
15 ——————————————————————————      )
                                   ) **Date: October 26, 2010**
16                                 )
                                   ) **Time: 2:00 p.m.**
17                                 )
                                   ) **Ctrm: 1668**
18                                 )
                                   )
19                                 )
                                   )
20                                 )
                                   )
21                                 )
                                   )
22                                 )
                                   )
23                                 )
                                   )
24                                 )
                                   )
25 ——————————————————————————      )
26
        BALLOT FOR ACCEPTING OR REJECTING PLAN OF REORGANIZATION OF
27
   ORLANDA CUNNINGHAM, DEBTOR.
28

                                   1

                    REORGANIZATION PLAN BALLOT

1

2    Orlanda Cunningham filed a reorganization plan dated April

3 2010. The Court has conditionally approved a disclosure statement with

4 respect to the Plan. The Disclosure Statement provides information to

5 assist you in deciding how to vote your ballot. If you do not have a

6 Disclosure Statement you may obtain a copy from Cameron Totten at

7 the address given above. Court approval does not indicate apporoval of

8 the Plan by the Court.

9

10    You should review the Disclosure Statement and Plan before you

11 vote. You may wish to seek legal advice concerning the Plan and your

12 classification and treatment under the Plan. If your interest falls into

13 more than one class you may vote with respect to each class in which

14 your claim falls. If your ballot is not received by the Debtor's attorney

15 at the address shown above on or before _____ and

16 such deadline is not extended, your vote will not count as either an

17 acceptance or rejection of the Plan.

18

19 If the Plan is confirmed by the Bankruptcy Court it will be binding on

20 you whether or not you vote.

21

22        ACCEPTANCE OR REJECTION OF THE PLAN

23

24 CREDITORS SHOULD SELECT THE CLASS UNDER WHICH

25 THEY FALL AND VOTE WITH RESPECT TO THEIR

26 PARTICULAR CLASS OR CLASSES.

27

28

Class 3 Claims (Secured claims)

**Class 3 A   - 1851 W. 85ᵗʰ St., Los Angeles, CA.**

Lender:    SPS Mortgage

Plan is:        Accepted [ ]   Rejected [ ].

**Class 3 B - 5149 W. 7ᵗʰ Ave.,. Los Angeles, CA**

Lender      BAC Home Loans Mortgage

Plan is:        Accepted [ ]   Rejected [ ].

**Class 3 C   - 5459 10ᵗʰ Ave., Los Angeles, CA**

Lender:    Wells Fargo

Plan is:        Accepted [ ]   Rejected [ ].

**Class 3 D   - 1814 New England St.**

Lender:        Deutsche Bank

Plan is:        Accepted [ ]   Rejected [ ].

**Class 3 E   - 5728 10ᵗʰ Ave., Los Angeles, CA**

Lender:    Indymac Bank Refinance

REORGANIZATION PLAN BALLOT                                        3

1    Plan is:              Accepted [ ]  Rejected [ ].

2

3    **Class 3 F   - 2200 W. 73rd St., Los Angeles, CA**

4

5              Lender:     American Home Mortgage

6

7    Plan is:              Accepted [ ]  Rejected [ ].

8

9    **CLASS 3 G      - 7214 10th Ave., Los Angeles, CA**

10

11             Lender:     Aurora Loan Service

12

13   Plan is:              Accepted [ ]  Rejected [ ].

14

15   **CLASS 3 H    - 1246 W. 68th St., Los Angeles, CA**

16

17             Lender: BAC Home Loans Service

18

19   Plan is:              Accepted [ ]  Rejected [ ].

20

21   ***************

22

23   Class 4 Claims (Impaired)

24      Name of Creditor _____

25      Amount of Impaired Claim _____

26

27   Plan is:         Accepted [ ]  Rejected [ ].

28

                    **REORGANIZATION PLAN BALLOT**                    4

```
 1  | ****************
 2  | Class 5 Claims (Partially impaired)
 3  |
 4  | Plan is:          Accepted [ ]   Rejected [ ].
 5  |
 6  | ****************
 7  |
 8  | Class 6 Claims (Unsecured claims)
 9  |       Name of Creditor _____
10  |       Amount of Claim _____
11  |
12  | **************
13  |
14  | Name of Creditor _____
15  |
16  | Class _____
17  |
18  | Signature of authorized party
19  |       for said creditor. _____
20  |
21  |
22  |
23  |
24  |
25  |
26  |
27  |
28  |
```

REORGANIZATION PLAN BALLOT                                    5